United States Courts
Southern District of Texas
FILED

SEP 05 2014

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | CRIMINAL NO. |
| v. § | |
| § | |
| STEPHEN B. GRAY § | |

## CRIMINAL INFORMATION

### COUNT ONE—Securities Fraud (Insider Trading)
(15 U.S.C. § 78j(b), 78ff; 17 C.F.R. § 240.10b-5)

The United States Attorney charges that at all time relevant to this Information:

### Introduction

1. In or about 2003, defendant **STEPHEN B. GRAY** was hired to be the Chief Executive Officer and managing partner of an investor relations firm located in Houston, Texas.

2. The firm provided a full range of investor relations services to publicly-traded companies, including assisting client companies with drafting and publishing announcements of quarterly and annual earnings, mergers and acquisitions, and other material events. As a result, **GRAY** had access to and possessed highly material, nonpublic information about firm clients and their securities.

3. The firm had a standard client agreement that included a confidentiality provision in which the firm agreed to protect client information and use it solely for business purposes, as well as a Business Conduct and Ethics Code (the "Code") and Statement of Policy Regarding Securities Trades by [Firm] Personnel (the "Trading Policy"). The Trading Policy discussed relevant federal securities laws that prohibit insider trading, and prohibited trading by firm personnel when in possession of "material non-public information relating to any of [the firm's] clients and/or their supplier." **GRAY** drafted these policies, and was personally responsible for ensuring that firm employees received and signed copies of each.

4. The firm's policies not only prohibited illegal trading, but rather prohibited firm personnel, including **GRAY**, from trading in any client securities, at any time.

5. **GRAY** regularly attended meetings with prospective clients where the firm's "pitch" emphasized that its personnel would not trade client securities.

6. A "call option" is a securities transaction that gives the holder the right to buy a certain quantity of an underlying security at a specified

price up to a specified expiration date. A call option gives the purchaser the right to "call in" or buy stock, and profit is made on a call option when the underlying stock increases in price.

7. A "put option," on the other hand, gives the holder the right to sell a certain quantity of an underlying security at a specified price up to a specified expiration date. A put option gives the purchaser to "put to" or sell stock, and profit is made on a put option when the underlying stock decreases in price.

8. Without access to nonpublic information, trades in options, particularly short- term options, can carry significant risk because the trader is betting that the common stock underlying the options will increase significantly (if buying call options) or decrease significantly (if buying put options), prior to expiration. If the stock does not meet the target price by the expiration date, the options expire out of the money and the trader loses all of the money he paid to purchase the option. The shorter the term of the option, the riskier it is, because the common stock has less time to reach the target price.

9. **GRAY** knew the prices of client stock were likely to increase or decrease after the information in client company announcements

became public, and that he would therefore be able to buy or sell his options for a profit.

10. In or about September 2009, **GRAY** opened a TD Ameritrade account and began trading the securities of firm clients in the account.

11. **GRAY** did not disclose his trades of client securities to the firm or its clients.

## The Insider Trading Scheme

12. From in or about September 2009 through in or about May 2012, the defendant, **STEPHEN B. GRAY**, used material non-public information that he acquired as part of his employment with the firm to make and cause to be made profitable trades, and trades to avoid losses, in his personal brokerage account at TD Ameritrade.

13. From 2010 until September 2011, **GRAY** primarily traded in the common stock of firm clients, sometimes holding the securities for months at a time. Starting in September 2011 and continuing to May 2012, **GRAY** began engaging in more risky and lucrative short- term options trades. For example, in several instances **GRAY** purchased out-of-the-money, short- term call and put options contracts, some of which expired less than two weeks after purchase.

14. **GRAY** obtained advance knowledge of material information that would be detailed in press releases issued by firm clients. **GRAY** then traded while in possession of such material information before the information became public.

15. On November 8, 2011, Powell Industries ("POWL") issued a press release announcing that its financial statements for the second and third quarters of 2011 should no longer be relied upon and would be restated.

16. **GRAY's** firm worked with Powell Industries ("POWL") on the announcement, and sent a draft of the release to POWL as early as October 23, 2011.

17. Between on or about October 18, 2011, and on or about November 3, 2011, while in possession of material, nonpublic information concerning POWL's upcoming announcement, **GRAY** purchased 15,000 POWL put options expiring in November with a strike price of $35. All of these options had the shortest term available.

18. After POWL issued its press release on November 8, 2011, its stock price declined 22%.

19. On or about November 9, 2011, **GRAY** sold his POWL options for a profit of $82,570.

## Execution/Statutory Allegations

20. From in or about September 2009 through at least May 2012, in the Southern District of Texas and elsewhere, defendant **STEPHEN B. GRAY** willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and of the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices and schemes to defraud; (b) making untrue statements of material facts and omitting to state material facts; and (c) engaging in acts, practices, and courses of business which operated as a fraud and deceit upon persons, to wit, on the basis of material, non-public information that **GRAY** obtained as part of his employment at an investor relations firm, **GRAY** executed and caused to be executed in his personal brokerage account the securities transactions listed below:

| Count | Dates | Transaction |
|---|---|---|
| 1 | October 18, 2011 through November 3, 2011. | Purchase of 15,000 POWL put options. |

In violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

## NOTICE OF CRIMINAL FORFEITURE
28 U.S.C. §2461(c); 18 U.S.C. §981(a)(1(C)

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)C), the United States gives notice to defendant STEPHEN B. GRAY that in the event of conviction of the securities fraud offenses alleged in Count One of this Information, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses, including but not limited to $326,159 in United States dollars.

### Money Judgment

Defendant is notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture. That amount is estimated to be, but is not limited to, approximately $326,159 in United States dollars.

### Substitute Assets Provision

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the total value of such property pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 28, United States Code, Section 2461(c).

          KEN MAGIDSON
          UNITED STATES ATTORNEY

          <u>/s/Belinda Beek</u>
          Assistant United States Attorney